BRYAN, Judge.
 

 David Bittinger (“the former husband”) appeals from a judgment entered by the Lawrence Circuit Court (“the trial court”) insofar as it modified his child-support obligation to Paula Bittinger Byrom (“the former wife”) and determined his child-support arrearage and from an order purporting to amend that judgment.
 

 Procedural History
 

 On January 15, 2008, the former husband filed a petition in the trial court seeking to hold the former wife in contempt for violating certain provisions of the parties’ divorce judgment that had been entered by the trial court in 1997. The former husband also requested, among other things, that he be allowed to claim the parties’ two minor children (“the children”) as dependents for income-tax purposes. The former husband also sought to modify two provisions in the parties’ divorce judgment that are not pertinent to this appeal. No further action was taken in the case until the former husband filed a motion for injunctive relief on January 23, 2009. In his motion, the former husband requested, among other things, that the former wife be enjoined from filing her income-tax return until the trial court ruled on his petition filed in January 2008.
 

 On January 29, 2009, the former wife filed an answer to the former husband’s petition for contempt and to modify the divorce judgment. The former wife also filed a counterclaim for contempt and a petition to modify the former husband’s child-support obligation. The former wife subsequently filed an amended counterclaim seeking reimbursement of medical expenses she had incurred on behalf of the children and an award of the child-support arrearage owed by the former husband.
 

 On or about February 3, 2010, the trial court entered a judgment (“the February 2010 judgment”) that modified the former husband’s child-support obligation, ordering him to pay $1,578 a month until the parties’ older child turned 19 (on May 15, 2010) and to pay $1,108 a month for the parties’ younger child from that point forward. The trial court also ordered the
 
 *930
 
 former husband to pay the former wife $26,623.40 as his child-support arrearage. That arrearage calculation included “applying the modified amount of [child] support back to the date of filing....” The judgment also ordered the former husband to pay the former wife approximately $681 as reimbursement for certain pharmaceutical bills and health-insurance co-pays that were not covered by health insurance.
 

 On February 12, 2010, the former wife filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., in which she sought, among other things, the issuance of an income-withholding order and reimbursement of a portion of the younger child’s orthodontic expenses and the cost of eye care for the children. The trial court set the former wife’s postjudgment motion for a hearing to be conducted on March 16, 2010. On March 4, 2010, the former husband filed a notice of appeal; this court assigned that appeal case no. 2090546.
 
 [1]
 

 On March 17, 2010, the trial court entered an order (“the March 2010 order”) amending the February 2010 judgment to provide for an income-withholding order and to require the former husband to contact the trial court clerk if his employer changed. On April 16, 2010, the trial court entered an order (“the April 2010 order”) that stated, in pertinent part:
 

 “The Court held a hearing on March 16, 2010, on the [former wife]’s Motion to Alter or Amend. No additional testimony was presented. The attorneys made oral arguments before the Court. The Court had given the attorneys additional time to submit caselaw for review on several issues discussed at the hearing on the Motion to Alter, Amend or Vacate. Specifically, those issues were the award of attorney’s fees and orthodontic bills of one of the minor children. The ... March ... 2010 [order] was in error and the Motion to Alter or Amend is GRANTED and the ... [February] ... 2010 [judgment] is AMENDED as follows.... ”
 

 The trial court then ordered the former husband to pay a portion of the orthodontic expenses incurred by the former wife, ordered the former husband to pay the former wife’s attorney’s fees in the amount of $4,650, ordered the entry of an income-withholding order, and ordered the former husband to contact the trial court clerk if he changed employers. The former husband filed a second notice of appeal from the April 2010 order; this court assigned that appeal case no. 2090700. This court consolidated the former husband’s appeals ex
 
 mero motu.
 

 Issues
 

 The former husband raises several issues for this court’s review, which can be summarized as follows: (1) whether the April 2010 order is void and (2) whether the trial court erred in its determination of his child-support obligation and his child-support arrearage.
 

 Standard of Review
 

 “Under the ore tenus rule, the trial court’s findings of fact are presumed correct and will not be disturbed upon appeal unless these findings are ‘plainly or palpably wrong or against the preponderance of the evidence.’
 
 Ex parte Cater,
 
 772 So.2d 1117, 1119 (Ala.2000). However, ‘[t]he ore tenus rule does not extend to cloak a trial judge’s conclusions of law ... with a presumption of correctness.’
 
 Eubanks v. Hale,
 
 752 So.2d 1113, 1144-45 (Ala.1999). Thus, the court’s legal conclusions are subject to
 
 de novo
 
 review.”
 

 
 *931
 

 Shealy v. Golden,
 
 897 So.2d 268, 271 (Ala. 2004).
 

 Discussion
 

 I.
 
 Appeal No. 2090700
 

 On appeal, the former husband argues that the April 2010 order is void because the March 2010 order amending the February 2010 judgment to include a provision for an income-withholding order effectively denied all other relief requested by the former wife. Thus, he argues, the trial court lost jurisdiction to make any further orders after it adjudicated the former wife’s postjudgment motion.
 
 See Ex parte Dowling,
 
 477 So.2d 400, 404 (Ala. 1985) (“In the usual case, after a post-judgment motion has been denied, the only review of that denial is by appeal; a judge has no jurisdiction to ‘reconsider’ the denial.”). Accordingly, this court must decide whether the March 2010 order amending the February 2010 judgment to include a provision for an income-withholding order constituted a final adjudication of the former wife’s postjudgment motion. If the March 2010 order disposed of the former wife’s postjudgment motion, the former husband’s notice of appeal from the February 2010 judgment, which had been held in abeyance until the adjudication of the former wife’s postjudgment motion, became effective on the date the March 2010 order was entered,
 
 see
 
 Rule 4(a)(5), Ala. R. Civ. P., and the trial court lost jurisdiction to further amend the February 2010 judgment.
 
 See Horton v. Horton,
 
 822 So.2d 481, 434 (Ala.Civ.App.2001) (quoting
 
 Ward v. Ullery,
 
 412 So.2d 796, 797 (Ala.Civ.App. 1982)) (“ ‘Once an appeal is taken, the trial court loses jurisdiction to act except in matters entirely collateral to the appeal.’ ”).
 

 In
 
 BancTrust Co. v. Griffin,
 
 963 So.2d 106 (Ala.Civ.App.2007), this court was faced with a similar question. In that case, the appellant (“BancTrust”) filed a postjudgment motion pursuant to Rule 59 challenging,
 
 “among other things, ...
 
 the trial court’s finding that it had stipulated to the admissibility of all the evidence-”
 
 Id.
 
 at 107 (emphasis added). The trial court subsequently entered an order amending the final judgment that “noted that BancTrust had objected to the admissibility of some of the evidence upon which [the court] had relied.”
 
 Id.
 
 Banc-Trust subsequently purported to file a second postjudgment motion pursuant to Rule 59, adopting the same arguments it had asserted in its first postjudgment motion.
 
 Id.
 
 at 108. The trial court purported to deny that motion, and BancTrust appealed.
 
 Id.
 
 On appeal, this court held that, despite the fact that the trial court’s order amending the judgment “did not explicitly address the pending postjudgment motion and did not specifically rule on that motion,” the “order did change the [original] judgment in a manner requested by Banc-Trust in its [first] postjudgment motion.”
 
 Id.
 
 at 109. We concluded that the order amending the original judgment was entered in response to BancTrust’s post-judgment motion and that the time for filing a notice of appeal began running on the date the trial court entered the amended order in response to BancTrust’s post-judgment motion.
 
 Id.
 
 at 109-10.
 

 Using the reasoning from
 
 BancTrust,
 
 we conclude that the March 2010 order was an adjudication of the former wife’s postjudgment motion, despite the fact that the trial court did not explicitly address the former wife’s postjudgment motion or state that it was ruling on the post-judgment motion, because the trial court amended the February 2010 judgment in a manner requested by the former wife in her postjudgment motion. Thus, the former husband’s notice of appeal from the February 2010 judgment, which was filed on March 4, 2010, became effective on March 17, 2010, after the trial court en
 
 *932
 
 tered that March 2010 order.
 
 See
 
 Rule 4(a)(5). Because the former husband’s notice of appeal became effective on March 17, 2010, the trial court lost jurisdiction on that date and, thus, did not have jurisdiction to enter the April 2010 order further amending the February 2010 judgment.
 
 See Horton v. Horton, supra.
 
 Because the trial court did not have jurisdiction to enter the April 2010 order, the April 2010 order is void and will not support an appeal.
 
 See T.B. v. T.H.,
 
 30 So.3d 429, 433 (Ala.Civ.App.2009) (quoting
 
 K.R. v. D.H.,
 
 988 So.2d 1050, 1052 (Ala.Civ.App.2008)) (‘“[A] judgment entered without subject-matter jurisdiction is void, ... and ... a void judgment will not support an appeal.’”). Accordingly, the former husband’s appeal taken from the April 2010 order is dismissed, and we instruct the trial court to set aside the April 2010 order.
 
 See T.B. v. T.H.,
 
 30 So.3d at 433-34.
 
 [2]
 

 II.
 
 Appeal No. 209054-6
 

 In appeal no. 2090546, the former husband challenges the trial court’s determination of his modified child-support obligation and its determination of his child-support arrearage, and he presents this court with several arguments to support his claim that the judgment should be reversed.
 

 First, the former husband argues that the trial court erred by utilizing the child-support guidelines appended to Rule 32, Ala. R. Jud. Admin., as amended. By order dated November 19, 2008, the Alabama Supreme Court amended Rule 32, Ala. R. Jud. Admin., including the child-support guidelines, effective January 1, 2009. The schedule of basic child-support obligations found in the appendix to Rule 32 was revised and updated to reflect “the latest extensive economic research on the cost of supporting children at various income levels.” Comment to Amendments to Rule 32, Effective January 1, 2009. The former husband argues that, because this action was filed in January 2008, the child-support guidelines as they existed at that time should have been used to calculate his child-support obligation. However, our review of the record reveals that the former husband failed to present this argument to the trial court for its consideration. “[An appellate c]ourt cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration or were raised for the first time on appeal.”
 
 State Farm Mut. Auto. Ins. Co. v. Motley,
 
 909 So.2d 806, 821 (Ala.2005). Accordingly, we will not consider the former husband’s argument that the trial court erred by applying Rule 32, as amended, effective January 1, 2009.
 

 
 *933
 
 Similarly, the former husband argues that the child-support guidelines, as they existed in January 2008, did not apply because the combined adjusted gross incomes of the parties exceeded $10,000. This argument was not presented to the trial court, and we will not consider it on appeal.
 
 See State Farm Mut. Auto. Ins. Co., supra.
 

 Next, the former husband argues that the trial court erred by failing to calculate his child-support obligation based on the evidence of his monthly income and health-insurance expense that were presented at trial. The record indicates that, at the time of the hearing, the former wife was unemployed, but she received $1,257 a month in unemployment benefits. The former husband testified that he had earned $210,070 in 2004, $258,487 in 2006, $216,294 in 2007, and approximately $151,000 in 2008.
 

 The former husband testified that he had worked at Inspec Group from early 2009 through the first week of September 2009. He testified that his yearly salary while he was employed at Inspec Group was $105,200 plus bonuses. The former husband stated that he had voluntarily quit his job with Inspec Group because it required extensive travel. After he left Inspec Group, he began working for a company called Parsons in Aiken, South Carolina. While he was employed by Parsons, the former husband earned the same wages that he had earned while employed by Inspec Group, but he did not receive a bonus while working for Parsons. The former husband testified that he had voluntarily quit his job with Parsons after two months because it required too much time away from his home, which was in or near Decatur. He denied that he had quit his job at Parsons to avoid a higher child-support obligation. Shortly before the ore tenus hearing, the former husband began working at H & M Company in Mobile. He stated that he earned $35 an hour. The former husband submitted a CS-41 child-support-obligation income state-meni/affidavit that stated that his health-insurance cost was $600 a month and that his employment income totaled $8,020 a month, or approximately $96,000 a year. The former husband also testified that he was not sure about the cost of health insurance and that the health-insurance cost was a “round-about figure.”
 

 At the conclusion of the hearing, the former wife’s attorney asked the trial court to determine the former husband’s income based on his projected income if he had continued his employment with Inspec Group because, he argued, the evidence indicated that the former husband had voluntarily quit that job in an effort to decrease his child-support obligation. In its judgment, the trial court stated that it had computed the former husband’s income by using a pay stub dated September 4, 2009, from Inspec Group and projecting the former husband’s year-to-date earning total through December 31, 2009. The trial court also used the cost of health insurance the former husband had incurred when he was employed by Inspec Group, or $223 a month, for purposes of calculating the former husband’s child-support obligation.
 

 Under Rule 32(B)(5), Ala. R. Jud. Admin., “[i]f the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income.” Although the trial court, in its judgment, did not explicitly find that the former husband was voluntarily underemployed, it was not required to do so, and we consider the trial court’s imputation of income to the former husband an implicit finding that the former husband was voluntary underem
 
 *934
 
 ployed.
 
 Schiesz v. Schiesz,
 
 941 So.2d 279, 287 (Ala.Civ.App.2006) (“A trial court does not have to make a specific finding that the parent is voluntarily ... underemployed; such a finding may be implicit in the trial court’s judgment.”).
 

 The former husband argues on appeal that the trial court erred by imputing income to him because a finding that he was voluntarily underemployed is unsupported by the evidence. “The trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed ‘is to be made from the facts presented according to the judicial discretion of the trial court.’ ”
 
 Clements v. Clements,
 
 990 So.2d 383, 394 (Ala.Civ.App. 2007) (quoting
 
 Winfrey v. Winfrey,
 
 602 So.2d 904, 905 (Ala.Civ.App.1992), and citing Rule 32(B)(5), Ala. R. Jud. Admin.). The facts presented to the trial court indicated that, after the former wife filed a petition to modify the former husband’s child-support obligation, the former husband voluntarily quit two jobs where he earned at least $41 an hour; the former husband claimed that his reason for quitting those two jobs was because of their location and travel time; and, shortly before trial, the former husband began working for a company located in Mobile earning $36 an hour. There was no indication that the former husband was able to spend more time with his family when working in Mobile rather than Aiken. Based on these facts, we cannot conclude that the trial court’s finding that the former husband was voluntarily underemployed was unsupported by the evidence or that the trial court exceeded its discretion in finding that the former husband was voluntarily underemployed.
 

 The former husband also argues that the trial court erred by imputing income to him based on his projected yearly income if he had continued his employment at Inspec Group. Rule 32(B)(5), Ala. R. Jud. Admin., states that,
 

 “[i]n determining the amount of income to be imputed to a parent who is unemployed or underemployed, the [trial] court should determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community.”
 

 The former husband argues that the trial court erred by taking his average income for the first eight months of 2009 and using that amount to project his income for the remainder of 2009 because his testimony indicated that he had received bonuses at Inspec Group that were part of his income, but he did not testify regarding the intervals that he received bonuses. Therefore, he argues, the evidence was insufficient to support the trial court’s judgment because the determination that he would have continued to receive bonuses for the remainder of 2009 was speculation on the part of the trial court. We disagree. The trial court was required to impute income to the former husband after it determined that the former husband was voluntarily underemployed.
 
 See
 
 Rule 32(B)(5). In doing so, the trial court was required to consider the former husband’s probable earning level based, in part, on his recent work history. We cannot conclude that the trial court was plainly or palpably wrong by determining the former husband’s probable earning level based on his average monthly income, including bonuses, he had earned at Inspec Group.
 
 See
 
 Rule 32(B)(1), Ala. R. Jud. Admin, (defining “income” to include “the actual gross income the parent has the ability to earn if the parent is ... underemployed”); and Rule 32(B)(2)(a), Ala. R. Jud. Admin, (defining “gross in
 
 *935
 
 come” to include “income from any source,” including bonuses).
 

 The former husband also argues that the trial court erred by failing to properly apply Rule 32(B)(7)(d), Ala. R. Jud. Admin., which states that “[t]he actual cost of a premium to provide health-insurance benefits for the children shall be added to the ‘basic child-support obligation’ Our review of the record reveals that the former husband never presented this argument to the trial court. As discussed above, this court is forbidden from reversing a judgment of the trial court based on grounds that were not presented to the trial court for its consideration.
 
 See State Farm Mut. Auto. Ins. Co., supra.
 

 [3]
 

 Next, the former husband argues that the trial court committed two errors on the face of its CS^2 child-support-guidelines form (“the CS-42 form”) used for calculating the former husband’s child-support obligation. According to the CS-42 form filled out by the trial court, the parties’ combined monthly adjusted gross income totaled $10,385. However, the trial court determined the former husband’s child-support obligation using the schedule for basic child-support obligation based on a combined adjusted gross income in the amount of $10,500, instead of the amount of $10,350, which was required pursuant to Rule 32(C)(1), Ala. R. Jud. Admin. (“Where the combined adjusted gross income falls halfway or more than halfway between two amounts, the higher value shall be used.”). The former husband also argues, and the record indeed indicates, that the trial court improperly determined his child-support obligation because the trial court failed to calculate the former husband’s total child-support obligation based on his percentage share of the parties’ combined adjusted gross income.
 
 See
 
 Rule 32(C)(2), Ala. R. Jud. Admin. In her brief on appeal, the former wife concedes that the trial court’s computation of the former husband’s child-support obligation was erroneous. Accordingly, we reverse that part of the trial court’s judgment that erroneously calculated the former husband’s modified child-support obligation.
 

 The former husband also argues that, because the trial court erred in its calculation of his monthly child-support obligation, the trial court must recalculate the child-support arrearage awarded to the former wife. We agree. The trial court determined the former husband’s child-support arrearage in part by applying the modified amount of support “back to the date of filing.” Because we have determined that the trial court erred in its calculation of the modified amount of the former husband’s child-support obligation, we conclude that the trial court must also recalculate the former husband’s child-support arrearage based on its corrected calculation of the former husband’s child-support obligation.
 

 Conclusion
 

 In appeal no. 2090700, the former husband’s appeal is dismissed because the appeal was taken from an order that is void for lack of subject-matter jurisdiction. On remand, we instruct the trial court to set aside the April 2010 order.
 

 In appeal no. 2090546, we reverse that part of the February 2010 judgment that determined the former husband’s child-support obligation and child-support ar-rearage, and we remand the case with instructions to the trial court to enter an order consistent with this opinion. In all
 
 *936
 
 other respects, we affirm the trial court’s judgment.
 

 APPEAL NO. 2090546 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 APPEAL NO. 2090700 — APPEAL DISMISSED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . That appeal was held in abeyance until the adjudication of the former wife's post-judgment motion.
 
 See
 
 Rule 4(a)(5), Ala. R. Civ. P.
 

 [2]
 

 . In her brief on appeal, the former wife argues that the April 2010 order constituted the final judgment in the case because the trial court, in the February 2010 judgment, failed to specifically rule on the former wife’s request for reimbursement of orthodontic expenses and eye-care expenses for the children. We disagree. In her counterclaim, the former wife sought reimbursement for "medical expenses” she had incurred on behalf of the children. At the final hearing, the former wife claimed that the former husband was required to reimburse her for pharmaceutical bills, health-insurance co-pays, orthodontic expenses, and eye-care expenses. In the February 2010 judgment, the trial court ordered the former husband to reimburse the former wife only for the pharmaceutical bills and the health-insurance co-pays. Although the trial court did not specifically deny the former wife's request for reimbursement of orthodontic expenses and eye-care expenses, the trial court's failure to do so did not render the judgment nonfinal because it was clear that the trial court's award of part of the requested relief for reimbursement of medical expenses constituted a denial of the relief that was not granted.
 

 [3]
 

 . We note, however, that the only evidence regarding the former husband’s actual cost of health insurance was the former husband’s testimony that he was not sure about the cost of health insurance and that $600 was a "round-about figure.”