PITTMAN, Judge.
This appeal arises from divorce proceedings involving Jacob Allen Thomas (“the husband”) and Leeann G. Thomas (“the wife”), who married in 2000 and who are the parents of four minor children. The wife filed a divorce complaint in the Jefferson Circuit Court in August 2010 alleging an irretrievable breakdown of the marriage and seeking, among other things, custody of the children, an award of child support, an award of alimony, and a division of the marital property; the husband answered and counterclaimed for a custody award in his favor or, in the alternative, for an award of shared custody. The wife filed two motions, and the husband filed one motion, seeking pendente lite relief; pursuant to an agreement between the parties, the trial court, in April 2011, entered an order (hereinafter “the pendente lite order”) that, among other things, awarded the wife custody pendente lite and directed the husband to pay $800 each month as child support and $365 each month toward the deductible amounts of the children’s health-insurance coverage from April 1, 2011, through the entry of a final judgment.
On May 4, 2011, eight days before trial, the wife sought contempt sanctions against the husband based upon his alleged failure to make the support and insurance-deductible payments required in the pendente lite order. The trial court directed that that matter would be heard at the time of trial. The trial court received testimony at trial from both parties and evidentiary exhibits introduced by the wife. Subsequently, on June 22, 2011, an order was entered divorcing the parties, awarding the wife primary physical custody of the children, setting the husband’s prospective monthly child-support obligation at $1,767.18, directing the husband to pay monthly rehabilitative alimony of $1,500 for three years, and deeming certain retirement funds or accounts that had been established for the husband’s benefit by three particular alleged business entities controlled by the husband to be an artifice designed to shield marital funds from the wife so as to be subject to a later division proceeding. Additionally, the trial court found the husband to be in criminal contempt for purportedly having failed to make the child-support payment for the month of April 2011 and the insurance-deductible payments for the months of April 2011 and May 2011 and sentenced him to 15 days of incarceration (with 10 days being suspended) to begin on June 24, 2011. When the husband did not appear to serve his sentence, the wife sought a further contempt finding as to that failure and as to his alleged nonpayment of the required monthly child support for June; the trial court then imposed the full 15-day sentence first imposed in the June 22, 2011, order. The husband then filed a motion challenging various aspects of that order, especially those pertaining to contempt and the divisibility of the retirement plans or accounts, and sought a stay of enforcement of the order. The trial court, on August 25, 2011, denied the husband’s motions but reduced his incarceration to five days.
On October 17, 2011, the wife filed another motion seeking a finding of contempt as to the husband, asserting that he had failed to comply with a number of obligations set forth in the June 22, 2011, order. The husband moved to direct the *196 entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. After a hearing on October 19, 2011, the trial court entered (a) an October 27, 2011, order again finding the husband in contempt and sentencing him to incarceration for 15 days and (b) a November 4, 2011, order denying the husband’s motion seeking a direction for the entry of a final judgment but vacating that portion of the June 22, 2011, order reserving jurisdiction to divide alleged retirement accounts and substituting a new provision effecting a division thereof; in the latter order, the trial court stated that it “considerfed the] cause to be final and closed.” The husband timely appealed from the judgment as finalized, raising four issues on appeal: one issue pertains to the contempt finding in the judgment and three issues concern the property-division and child-support aspects of the judgment.
The husband’s first issue concerns the correctness of the trial court’s judgment finding the husband in contempt. A review of the June 22, 2011, order and the trial court’s subsequent orders indicates that the stated underlying basis for the trial court’s initial contempt determination was the husband’s failure to satisfy his pendente lite support-payment obligations, as specified in the June 22, 2011, order; each subsequent trial-court order finding the husband in contempt refers to the husband’s having failed to report for a sentence of incarceration to be served that stemmed from that underlying substantive determination. The husband correctly points out, however, that the recorded testimony at trial uniformly tended to show that the husband, rather than having failed to make the support payments as required in the April 2011 pendente lite order, actually had complied with that order; the husband testified that he had made all payments required for April and May 2011, and the wife admitted that the husband had paid $800 in monthly child support beginning in March 2011. Thus, to the extent that the trial court’s judgment as finalized has attempted to sanction, pursuant to that court’s contempt jurisdiction, the husband for noncompliance with the April 2011 pendente lite order without evidence thereof, that judgment is due to be reversed because it is “‘unsupported by the evidence so as to be plainly and palpably wrong.’ ” Cavender v. State Mut. Ins. Co., 748 So.2d 863, 868 (Ala.1999) (quoting Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994)).
We now turn to what the husband labels, in his summary of his arguments on appeal, “[t]he second major issue,” i.e., whether the trial court “totally disregarded ... undisputed evidence that the [h]usband’s retirement ] funds were legitimate.” The record reflects that the husband, during the 10 years between his college graduation and the trial in this cause, worked at several jobs in the health-care industry, including work as a physical-therapy liaison, service as a pharmaceutical-sales representative, labor for a medical-device manufacturer, work for an orthopedic-device concern, and ultimately employment with a corporation known as “Organogenesis” as a consultant/specialist paying more than $150,000 in 2010. However, the record also reflects that after 2008 — during which year, the wife testified, she had first indicated to the husband that she was contemplating a divorce — the husband opened separate checking accounts in the names of three business entities (“Live Free, LLC”; “MedLabs, LLC”; and “Pioneer, LLC”). The wife showed at trial that those entities had never been registered to conduct business in Alabama, and she focused the bulk of her questioning of the husband upon the financial activities of *197 the husband regarding those accounts and various retirement and investment accounts that took place during the period leading up to the filing of the wife’s divorce complaint in August 2010.
The husband admitted in his trial testimony that the “Live Free” entity existed solely as an “entity for retirement accounts,” and exhibits admitted into evidence at trial indicated not only that that entity was the source of the majority of the funds in an account with T. Rowe Price Investments denominated “Live Free LLP Individual 401k”[1] into which $16,500 had been deposited in 2009, but also that the sum of $28,800 had been transferred from that entity’s bank account to an American Century Investments account in the name of “Livefree Roth 401k Plan Trust — Jacob A. Thomas” during June 2010 and July 2010, the two months immediately preceding the initiation of the divorce action. The record further reflects that funds from the bank account opened in the name of “Pioneer, LLC” (which the husband identified as being an entity he created to handle transactions involving certain consulting work he had done for a particular physician) had also been directed to the “Live Free” entity and to a retirement account held by the husband at Vanguard Investments (the latter having received a $16,285.62 deposit in January 2010). Similarly, the wife adduced evidence tending to show that $26,000 from the bank account for “MedLabs, LLC” had been directed to two investment accounts between January and May 2010, one with Vanguard Investments in the name of “VFTC TR Livefree LLP Individual Roth 401 (k)” and one with E*TRADE Securities LLC (“E*TRADE”) in the husband’s individual name. Finally, when the husband was asked at trial whether he had made any deposits to a particular individual-retirement-arrangement account with Zecco Trading that had been opened in his name in February 2009 and had held cash and securities worth approximately $7,720, the husband responded “[mjaybe, maybe early last year,” ie., during 2010.
The trial court, in its November 4, 2011, order finalizing its property division, expressly determined that the “Live-Free” entity, “MedLabs, LLC” and “Pioneer, LLC” had each been “invented to shield marital funds from the” wife, and it awarded the wife 50% of the husband’s holdings in the American Century Investments account, the Vanguard Investments accounts, the T. Rowe Price account, and the Zecco account. Although the husband correctly points out that those accounts, being in the nature of individual-retirement arrangements, may well have fallen within the definition of “retirement benefits” whose inclusion in divisible marital property is statutorily conditioned upon the parties’ “hav[ingj been married for a period of 10 years during which the retirement was being accumulated,” see Ala. Code 1975, § 30 — 2—51(b)(1), Alabama law simultaneously recognizes both that “a transfer of property made to defeat a spouse’s rights in marital property is voidable” and that “[wjhether a transfer is made to defeat a spouse’s property rights is a question of fact” (Pattillo v. Pattillo, 414 So.2d 915, 916 (Ala.1982)); further, as this court has previously noted, “[a] court of equity in a divorce case has power to use any reasonable means to effect a just property settlement and adjust the equities of the parties.” Jernigan v. Jernigan, *198 344 So.2d 778, 780-81 (Ala.Civ.App.1977). From the evidence of record, the trial court could properly have determined, as it did, that the husband’s having shifted over $90,000 of marital assets from bank accounts titled in the names of dubious corporate entities to various “retirement” accounts after having had notice of the wife’s dissatisfaction with the marriage was an effort to hinder an equitable property settlement upon dissolution of the marriage, and we affirm the trial court’s treatment of those accounts.[2]
The husband also contends that the trial court erred in imputing a monthly income to him of $9,000 with respect to calculating his child-support obligation.[3] We note that, in setting child support, the trial court is afforded the discretion to impute income to a parent when a parent is voluntarily unemployed or underemployed — a determination that, in turn, is to be made from the evidence presented. See Bittinger v. Byrom, 65 So.3d 927, 934 (Ala.Civ.App.2010).
Although the husband correctly notes that the trial court’s judgment refers to the existence of the “sham” business entities as indications of the voluntariness of the husband’s unemployment, there is substantial evidence indicating that the husband is voluntarily unemployed without reference to those entities. The husband testified that his employment with Organo-genesis was terminated by that company in February 2011 based upon salary considerations, but he denied having sought to keep his job at a reduced salary. Also, evidence regarding his subsequent job-search efforts was by no means clear and unequivocal. Although the husband testified that he was “exhaustively” working with 20 of the “best recruiters in the business” of medical consulting “trying to find good employment” and that he spent time daily “networking,” he admitted that he had submitted job applications only through such recruiters rather than making any such applications on his own behalf. In a motion to continue in the cause, the husband represented to the trial court, through counsel, that he would not be able to attend a scheduled April 11, 2011, hearing because of “an appointment out of state involving possibilities of new employment,” yet he later admitted at trial that, during that month, he had actually left Alabama simply to enjoy a free trip to California that a male friend of his had won.
Under Rule 32(B)(5), Ala. R. Jud. Admin., a trial court, in “determining the amount of income to be imputed to a parent who is unemployed or underemployed,” is directed to “determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community.” In this case, the husband had earned $9,000 per month until three months before trial; he had 10 years of work experience in the health-care field following his college graduation; and the husband himself testified that he was “[v]ery” optimistic about gaming employment at the same approximate income he *199 had previously earned. Acting within its discretion, the trial court, from the evidence we have summarized, could properly have determined that the husband had the ability to earn as much as he had earned previously if he were to make a concerted effort to obtain employment; because the trial court’s determination was not “plainly or palpably wrong,” Bittinger, 65 So.3d at 934, its judgment is due to be affirmed as to the child-support issue.
Finally, we turn to the husband’s final issue, in which he assails the property division as a whole as being “inequitable and unjust” because, he says, the trial court “ignored the undisputed evidence of the legitimacy of the [hjusband’s retirement accounts and imputed nonexistent income to the [h]usband.” The underlying premise of the husband’s argument as to that issue, however, presupposes that the retirement accounts were, in fact, legitimate and that income was, in fact, improperly imputed; our conclusions to the contrary in our consideration of the husband’s second and third issues render that premise unsound. The trial court, in exercising its discretion to divide the marital property, was free to consider factors other than the husband’s claim that the wife was at fault in precipitating the divorce; notably, the trial court could properly have deemed significant the wife’s questionable future prospects given her lack of a college diploma and her primary custody of the parties’ four young children. See Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996) (outlining numerous factors considered in dividing property incident to a divorce). Thus, to the extent that the trial court’s property division may have favored the wife,[4] we cannot conclude that it is inequitable so as to be plainly and palpably wrong. Golden, 681 So.2d at 608.
Based upon the foregoing facts and authorities, we affirm the trial court’s judgment in its entirety except for that portion finding the husband to be in contempt based upon his purported noncompliance with the April 2011 pendente lite order; as to that component alone, we reverse the judgment, and we remand the cause to the trial court for vacation of that portion of the judgment. The wife’s request for an award of an attorney’s fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BRYAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. There is no indication in the record that the "Live Free" entity was actually operated or was intended to be operated as a limited-liability company so as to warrant the use of the identifier "LLC” or as a limited-liability partnership so as to warrant the use of the identifier "LLP."

. Although the husband avers that the trial court improperly mandated that the transfer of the wife’s portion of those accounts be "non-taxable,” he cites no authority tending to show that a "Qualified Domestic Relations Order” could not issue to the various plan administrators directing recognition of the wife's rights under the judgment. Cf. Stamm v. Stamm, 922 So.2d 920, 922-23 (Ala.Civ.App.2004) (discussing such orders).

. The trial court also imputed a federal-minimum-wage income to the wife, who lacks a college degree and did not work outside the home during the parties’ marriage.

. The husband, in a tabular rendering of the property division contained in his brief on appeal, incorporates his position that he will suffer tax liabilities as a necessary component of implementing the trial court’s division of the retirement accounts stemming from its determination that the husband had secreted assets. That position is, however, unsupported. See note 2, supra.