Rel: November 15, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0223

_____

### W.D.G.

### v.

### K.S.G.

### Appeal from Marion Circuit Court
### (DR-23-900024)

LEWIS, Judge.

W.D.G. ("the husband") appeals from a divorce judgment entered by the Marion Circuit Court ("the trial court"). We affirm the judgment in part, reverse the judgment in part, and remand the cause to the trial court with instructions.

Procedural History

On March 6, 2023, K.S.G. ("the wife") filed a complaint seeking a divorce from the husband. The next day, the trial court entered an ex parte status quo order. The husband filed an answer and a counterclaim for a divorce on April 4, 2023. The wife thereafter filed a reply to the counterclaim. On July 28, 2023, the wife filed a motion requesting that the husband be held in contempt for violating the status quo order.

After a trial, the trial court entered a judgment on January 16, 2024, divorcing the parties based on the husband's adultery, dividing the parties' property and debts, ordering the husband to pay alimony in gross, and ordering the husband to pay a portion of the wife's attorney's fees. On January 23, 2024, the trial court entered an order finding the husband in contempt of court.

The husband filed a postjudgment motion on February 14, 2024. That motion was denied on March 19, 2024. The husband filed his notice of appeal to this court on March 26, 2024.

Discussion

On appeal, the husband argues: (1) that the trial court erred by awarding the wife over 50% of the value of his retirement accounts; (2)

that the trial court exceeded its discretion by awarding the wife "substantially all of the marital assets"; (3) that the trial court erred by awarding the wife alimony in gross in the amount of $200,000; and (4) that the trial court's finding of adultery was not supported by sufficient evidence. The husband's brief at 29. We address the husband's arguments out of turn.

I.

We first consider whether the trial court's finding of adultery was supported by sufficient evidence.

> "When this court reviews a divorce judgment entered after the presentation of ore tenus evidence, we presume that the trial court's factual findings are correct, and we will reverse a judgment based on those findings only if the evidence does not support the judgment so as to render it plainly and palpably wrong. Clements v. Clements, 990 So. 2d 383, 389 (Ala. Civ. App. 2007)."

Cauthen v. Cauthen, [Ms. CL-2023-0382, Sept. 27, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024).

> "[I]t is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented. Blackman v. Gray Rider Truck Lines, Inc., 716 So. 2d 698, 700 (Ala. Civ. App. 1998). The role of the appellate court is not to reweigh the evidence ...."

Ex parte Hayes, 70 So. 3d 1211, 1215 (Ala. 2011).

The husband cites Rowe v. Rowe, 575 So. 2d 584, 587 (Ala. Civ. App. 1991), which explains the measure of proof required for a finding of adultery as follows:

> "The act of adultery may be proven by circumstantial evidence, but more than a mere suspicion must be created. In addition, the circumstances created must be 'such as would lead the guarded discretion of a reasonable and just man to conclude that the act of adultery has been committed,' Billington v. Billington, 531 So. 2d 924 (Ala. Civ. App. 1988), and 'to the conclusion of adultery as a necessary inference.' Boldon v. Boldon, 354 So. 2d 275, 276 (Ala. Civ. App. 1978) (quoted with approval in Maddox v. Maddox, 553 So. 2d 611, 612 (Ala. Civ .App. 1989))."

In the present case, the evidence indicated that the parties were married in 1988. The wife testified that she thought that she and the husband had a great marriage until October 2017, at which time the husband became seriously ill. According to the wife and the parties' daughter, the husband was hospitalized and diagnosed with AIDS. The husband, on the other hand, testified that he was diagnosed with HIV, not AIDS. According to the husband, during the parties' marriage, he never voluntarily had sex with anyone other than the wife. He testified that he had been raped on the side of the road in 2011 or 2012 but did not tell the wife until after he became ill in 2017. According to the husband, he did not report the rape to the police or go to the hospital. The husband

4

testified that he initially believed that he had contracted HIV from the rape; however, he stated that he later learned that he likely contracted HIV from a blood transfusion during his illness. The trial court stated in the judgment that it found the husband's testimony regarding the alleged rape to be "totally unbelievable." The wife has been tested for HIV numerous times since 2017, and she has tested negative each time.

The parties' daughter testified that, in 2019, she found an explicit photograph on the husband's cellular telephone. She also saw text messages between the husband and the other person, and she understood the messages to be referencing a meeting between the two. The husband admitted that the photograph was on his phone and that he had told the person to call him. The husband, however, denied meeting the person. The parties' daughter testified that she did not tell the wife about the photograph or the text messages until years later.

The wife testified that the husband was often on his computer or his cellular telephone late at night. She testified that he would hide what he was looking at from her. According to the wife, she finally decided that she could no longer stay in the marriage when the husband, once

again, refused to show her what he was looking at on his cellular telephone. The wife moved out of the parties' marital home in July 2022.

The husband cites the following cases in which this court held that the evidence was insufficient for a finding of adultery: Fowler v. Fowler, 636 So. 2d 433 (Ala. Civ. App. 1994); Turner v. Turner, 210 So. 3d 603 (Ala. Civ. App. 2016); and Capone v. Capone, 962 So. 2d 835 (Ala. Civ. App. 2006). In Fowler, this court held that the evidence was insufficient to establish adultery when the only evidence was that the husband in that case and his coworker had had numerous telephone conversations and had "associate[d] outside of the office, that the parties' counselor considered the relationship between the husband and his co-worker inappropriate, that the husband had rejected his wife during the period in which the telephone calls occurred, and that the marriage had deteriorated." 636 So. 2d at 435-36. In Turner, this court held that

> "[t]he mere fact that the [the wife in that case] was seen in a public venue with [another man] and that she had engaged in unexplained acts of 'secretness' as well as had frequently used her cellular-telephone and text-messaging service to communicate with unknown persons [did] not equate to evidence of adulterous conduct."

210 So. 3d at 607. In Capone, this court held that there was insufficient evidence of adultery when the evidence of adultery consisted of frequent

6

telephone calls between the husband and another woman before the parties separated and an overnight stay with that same woman after the parties' separation. 962 So. 2d at 839.

We find the above cases to be distinguishable from this case. The evidence in the present case does not consist of mere telephone calls and in-person associations that could be either adulterous or platonic. Here, there was undisputed evidence indicating that the husband was diagnosed with either HIV or AIDS during the parties' marriage. The husband claimed that he voluntarily had sex with only the wife but that he had been raped years before his diagnosis. He also explained that he believed that he contracted HIV from a blood transfusion during his illness. The trial court, however, found that the husband's testimony was not credible, and that determination was within the province of the trial court to make. See Hayes, 70 So. 3d at 1215. There was also evidence indicating that the husband's telephone contained explicit photographs and text messages referring to a meeting between the husband and another person. The husband also repeatedly hid his cellular telephone and computer from the wife. Considering the evidence as a whole, the trial court could have determined that the evidence in this case did not

7

lend itself to a platonic explanation but, instead, necessarily implied that the husband had committed adultery. See Rowe, 575 So. 2d at 587. Therefore, we conclude that the trial court did not exceed its discretion in divorcing the parties on the ground of adultery, and the judgment is affirmed with respect to that finding.

## II.

We next address whether the trial court erred by awarding the wife over 50% of the value of the husband's retirement accounts. The trial court's judgment awarded the wife "one hundred percent (100%) of the Husband's Perspective II IRA Annuity with Jackson National Life Insurance Company." The trial court stated that "[i]t was represented to the Court that said account has (at minimum) an accumulated value of $286,270.65." The wife was also "awarded one hundred percent (100%) of the Husband's TD Ameritrade rollover IRA."

Section 30-2-51, Ala. Code 1975, provides, in pertinent part:

"(b)(1) The marital estate is subject to equitable division and distribution. Unless the parties agree otherwise, and except as otherwise provided by federal or state law, the marital estate includes any interest, whether vested or unvested, either spouse has acquired, received, accumulated, or earned during the marriage in any and all individual, joint, or group retirement benefits including, but not limited to, any retirement plans, retirement accounts, pensions, profit-

sharing plans, savings plans, annuities, or other similar benefit plans from any kind of employment, including, but not limited to, self employment, public or private employment, and military employment.

"(2) Notwithstanding the foregoing, unless the parties agree otherwise, the total amount of the retirement benefits payable to the noncovered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."

According to the wife, the husband had a Stone Wealth individual retirement account ("IRA"). She testified that the last statement she saw from that account indicated that the husband's account balance was approximately $440,000. The wife testified that, in 2020, the husband transferred $300,000 of those funds to a rollover IRA with Jackson National Life Insurance. She stated that she did not know where the rest of the funds were transferred. The husband confirmed that Stone Wealth funds had been rolled over into the Jackson National Life Insurance IRA. He testified that he deposited the remaining $100,000 into a TD Ameritrade account owned jointly by him and the wife.

The husband also had an IRA with TD Ameritrade. He admitted that he took distributions from the TD Ameritrade IRA in 2022 in the amount of $82,200. According to the statements introduced into evidence, those distributions were made before the parties' separation.

9

The evidence also indicated that the husband had withdrawn $99,500 from that IRA in 2021. The husband testified that every distribution from the TD Ameritrade IRA had been deposited into the parties' joint checking account with Wells Fargo. The most recent statement introduced into evidence indicated that the TD Ameritrade IRA had been depleted to $314.58 by May 2023.

Considering both IRAs, the husband's retirement accounts totaled $286,585.23. The wife was awarded 100% of that amount, which is a violation of § 30-2-51(b)(2). In the wife's brief to this court, she argues that the trial court could have determined that the husband's transfer of $300,000 into the Jackson National Life Insurance IRA was voidable. She also argues that the trial court could have considered that the husband withdrew $82,200 from the TD Ameritrade IRA in 2022. The wife cites Thomas v. Thomas, 109 So. 3d 193, 196 (Ala. Civ. App. 2012), in support of her argument. In Thomas, this court affirmed a trial court's judgment awarding the wife in that case 50% of her husband's retirement accounts even though the parties had not been married 10 years, which was required for retirement accounts to be divisible under the version of § 30-2-51(b)(1) applicable at that time. This court noted that the trial

court found that "the husband's having shifted over $90,000 of marital assets from bank accounts titled in the names of dubious corporate entities to various 'retirement' accounts after having had notice of the wife's dissatisfaction with the marriage was an effort to hinder an equitable property settlement upon dissolution of the marriage." 109 So. 3d at 198. The wife also cites Yohey v. Yohey, 890 So. 2d 160, 166 (Ala. Civ. App. 2004), in which this court approved a trial court's decision to award the wife in that case an additional sum to compensate her for funds that had been removed from the parties' retirement accounts in violation of pendente lite orders, and Jernigan v. Jernigan, 344 So. 2d 778, 780 (Ala. Civ. App. 1977), in which this court affirmed a trial court's decision to void a transfer of money that the husband in that case had made to the parties' daughter to keep the money from his wife.

We find the facts of the above-cited cases distinguishable from the facts of the present case. Here, the husband did not shift assets from nonretirement accounts into retirement accounts like was done in Thomas, 109 So. 3d at 196. Instead, he rolled over one IRA into another IRA, and, therefore, the character of the funds with respect to § 30-2-51 remained unchanged. With respect to the withdrawals of funds from the

11

TD Ameritrade IRA, we note that those withdrawals were made before the parties' separation, and the husband testified that the funds were transferred to a joint account. The husband did not withdraw the funds in violation of a pendente lite order, see Yohey, 890 So. 2d at 166, or transfer those funds to a third party, see Jernigan, 344 So. 2d at 780. Therefore, we cannot conclude that the circumstances in this case justified the voiding of any transfers.

Because the trial court's division of the husband's retirement funds violated § 30-2-51(b)(2), we reverse the trial court's judgment in part. Because we are reversing the judgment with respect to the division of the retirement funds, we pretermit consideration of the husband's other arguments concerning the division of the property. See Stover v. Stover, 176 So. 3d 854, 863 (Ala. Civ. App. 2015). On remand, the trial "court is instructed to reconsider the equities and to make an equitable division of the parties' property." Id.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, and Fridy, JJ., concur.

Moore, P.J., concurs in the result, without opinion.