On Application for Rehearing

DONALDSON, Judge.
The no-opinion order of affirmance of May 9, 2014, is withdrawn, and the following is substituted therefor.
Mark Cooper (“the husband”) appeals from a judgment of the Lauderdale Circuit Court (“the trial court”) divorcing him from Diana Cooper (“the wife”). Among other things, the judgment addressed the division of the parties’ marital property, child custody, child support, and alimony. The husband contends that the judgment should be reversed because (1) he was prohibited from presenting testimony at trial from the minor children of the par *1234 ties, (2) the wife should not have been awarded periodic alimony, and/or (3) the wife should not have been awarded physical custody of the children. We affirm the trial court’s judgment.

Facts

The following facts are pertinent to the issues raised on appeal. The wife and the husband married in 1988. Two children were born of the marriage: a son, C.H.C., born in 1999, and a daughter, M.A.C., born in 2000. The wife filed a complaint for a divorce from the husband in the trial court in September 2009, alleging as the ground an incompatibility of temperament between the parties. In her complaint, the wife sought, among other relief, an order awarding custody of the children to her, a division of the martial property, alimony, and child support.
In October 2009, the trial court entered a “Preliminary Order” addressing certain issues pendente lite. Regarding custody of the children, the order provided:
“The Court strongly suggests that children be allowed to continue to reside in the parties’ marital/family residence during the pendency of this action in the custody of the parent who traditionally has provided the child(ren)’s principal care and control prior to the initiation of this action. If the parties cannot agree on which parent will remain in the marital residence with the children, each party shall be entitled to reside in the marital residence until further order of the court.”
The parties lived together with the children in the marital residence until November 2010, when the wife moved with the children from the martial residence to an apartment. In December 2010, the wife filed a motion with the trial court seeking an order permitting her to move from the martial residence with the children. In the motion, the wife alleged that the living arrangement in the marital residence had become unreasonably tense and noted that the children would continue to attend the same school following her move. In support of her request, the wife alleged:
“[T]hat' the [husband] is disabled and suffers from various maladies, which include PTSD [post-traumatic stress disorder]. The [wife] has recently learned that the [husband] has been hearing ‘voices of old friends.’ The [husband] has also advised the wife that he has experienced an ‘out of body’ experience. As a result of these disorders, coupled with the medications which he takes, he is not physically or emotionally equipped to care for the children on a 24/7 basis. He is capable of assisting with the children and the [wife] intends for his relationship with the children to continue.”
The trial court entered an order granting the wife’s request to move with the children to the apartment and granting the husband specific “parenting time with the children.” The order appears to have been entered the same day the motion was filed and without prior notice to the husband. The husband responded with an objection to the order and a counterclaim seeking physical custody of the children. The children lived with the wife in a separate residence from November 2010 throughout the remainder of the proceedings.
The trial was conducted over five days between October 2011 and June 2012. Before the trial, the parties submitted a joint memorandum to the court purporting to resolve all issues concerning the division of their marital property and marital debt. However, an issue arose concerning a debt allegedly owed to the wife’s mother. The husband’s counsel stated at trial that the husband thought all issues had been resolved other than child custody, and the court responded that the memo *1235 randum would be accepted “only as a reference point.” Later in the trial, the parties indicated to the trial court that the memorandum was mutually acceptable. The memorandum concerning the division of the parties’ marital property and marital debt was adopted in the final judgment, and neither party challenges the division of property or debt on appeal.
Testimony showed that the husband, who was in his mid-50s at the time of the trial, became employed by the United States Postal Service before the marriage. At the time of his employment, the husband was receiving compensation from the Department of Veterans Affairs due to a skin condition he had acquired during military service that left him partially disabled. Approximately 18 months after he married the wife, he was terminated from employment with the Postal Service because he had allegedly provided false information on his application for employment. He did not work again in any capacity. In 1995 or 1996, the husband was determined to be 100% disabled by the Department of Veterans Affairs due to unspecified medical reasons. The husband regularly took several prescription medications for attention-deficit disorder and anxiety as well as for his skin condition. The husband testified that he had seen 9 or 10 psychiatrists in an attempt to regulate his medications. The husband testified that he did not know the reason why he had been determined to be totally disabled, although he testified that the maximum disability percentage possible for his skin condition was 50%.
On his child-support documentation, the husband listed an average monthly income of $4,302, or $51,624 in annual income. On appeal, the husband argues that his monthly income was $4,497. Although various amounts were given over the course of the trial, it was undisputed that the husband paid the health-insurance premiums for the children in an approximate amount of $313 per month. The husband claimed that his monthly expenses exceeded his monthly income by six dollars. His trial testimony regarding the nature of those expenses was sparse and disjointed.
Testimony showed that the wife had been forced to become employed when the husband was terminated from his employment, that she had been employed throughout most of the marriage, and that the wife had had to return to work soon after the birth of each child. At the time of the trial, the wife was employed as an office manager for a physician. The child-support-guideline forms showed the wife’s average monthly income to be $2,562, or $30,744 annually. At trial, the wife testified that, based on a recent raise, she estimated that she earned $2,800 per month. The wife initially estimated that her monthly expenses exceeded her monthly income by $1,000, but in later testimony she stated that her expenses exceeded her income by “six to seven hundred” dollars. The wife requested $433 per month in alimony from the husband.
The primary dispute throughout the trial focused on physical custody of the children. The testimony was in conflict regarding the proper parent to have primary physical custody of the children. Both the husband and the wife testified as to their respective merits for serving in that capacity, and as to the respective demerits of the other spouse for serving, and both parties called other witnesses in attempts to bolster their positions. The husband testified that he would routinely take the children to school and pick them up after school. The husband also stated that he was responsible for ensuring that the children did their homework. Following the separation in November 2010, the husband testified, the wife took the children to *1236 school and the husband picked up the children after school while the wife worked. The children alternated spending weekends with the parents. It was the husband’s position that, although the wife was a good mother and the children had a good relationship with her, he was more active in the lives of the children and provided more of the daily care for them.
In contrast, the wife contended that the husband had not been the primary caregiver for the children but that she was the primary nurturing parent. The wife testified that, before the separation and despite her work schedule, she was responsible for getting the children up and ready for school, for the children’s bathing and bedtime routines, for the children’s medical needs, for taking the children to school, and for the children’s laundry and clothing needs. The wife also presented evidence indicating that the husband had a violent temper and was prone to violent outbursts that had been witnessed by the children. The wife described the husband’s punching holes in walls and breaking chairs. The wife also testified that, before the separation, she and the children would often lock themselves in a room to avoid contact with the husband if he was acting violently and that she was often in fear of the husband. The wife presented evidence indicating that the husband often behaved irrationally and exhibited strange behaviors such as hoarding possessions and claiming to hear voices. She described occasions when the husband would not be in control of his actions because of severe panic attacks. The wife also alleged that the husband watched pornography on a computer that was accessible to the parties’ daughter.
The trial court heard testimony from several witnesses, in addition to the parties, on the issue of child custody. The husband presented testimony from his brother, who thought the husband appeared to be the primary caregiver for the children when he visited the marital home. The husband also presented testimony from a principal and a teacher at a school attended by the children. The principal testified that he had observed the husband picking the children up from school in the afternoons. The teacher testified that the husband regularly attended school functions during the school day and that he had had no contact with the wife. The husband also presented testimony from three male neighbors and a female neighbor who lived near the marital residence. The neighbors stated that the husband appeared to have a good relationship with the children. The neighbors said that they had had limited contact with the wife.
The wife presented testimony from a friend of the family whose observations were that the wife was the primary caregiver for the children. The friend also testified that the husband belittled the wife in front of the children and had an unreasonable and exaggerated perception of his contributions to the parenting responsibilities within the family structure.
There was an indication that the grades of one of the children had begun to decline since the parties’ separation. However, the evidence showed that both children were well adjusted, thrived academically in school, and participated in other activities.
Before trial, the husband filed a motion in April 2011 seeking the appointment of a guardian ad litem to represent the children. In that motion, the husband’s counsel asserted that the appointment would be “beneficial for the minor children.” The trial court denied the motion; Shortly thereafter, in May 2011, the husband filed a second motion to appoint a guardian ad litem. In that motion, the husband offered to pay the full cost of the guardian ad litem’s services and stated:
*1237 “The Guardian ad litem would prevent the children from having to testify in open court and would also allow the children to express their desires to a neutral party who is representing them as opposed to being placed in an adversarial position where they will have to testify as to which parent they wish to reside with.”
That motion was granted. The first attorney appointed to serve as the children’s guardian ad litem withdrew due to a conflict of interest. A second attorney was then appointed to serve as the guardian ad litem throughout the proceedings.
On June 7, 2011, the guardian ad litem filed a written report with the trial court. In that report, the guardian ad litem noted that she had been involved in the case only for a week but that, in her opinion, the children were in a stable home environment living with the wife. The guardian ad litem noted that the husband appeared to resent the wife’s employment. The guardian ad litem also reported that the husband had “smashed chairs against walls when he is frustrated or angry,” that the wife was “timid” and fearful of the husband, and that the home atmosphere before the separation had been unhealthy for the children. The guardian ad litem recommended that the children remain in their living arrangement with the wife. The guardian ad litem’s report did not attribute any statements, comments, opinions, or preferences to the children.
On the last day of trial, the following occurred when the husband attempted to present evidence from the children:
“THE COURT: Well, [husband’s counsel], do you have any other witnesses?
“[HUSBAND’S COUNSEL]: No, sir. Other than we wanted to call the children in camera before the court with the court reporter and the two attorneys and the guardian ad litem in there.
“[WIFE’S COUNSEL]: Well, Your Honor, of course we would object to the children being called as witnesses. They’ve got a guardian ad litem and there’s a guardian ad litem report that reflects that it would be detrimental to the children to be called as witnesses and put them under further emotional stress and strain. And we would object to that. I would assert that it’s discretionary with the Court giving the circumstance and the fact that the children do have an attorney for the Court to allow them to be called as witness.
“THE COURT: [Guardian ad litem], do you have any input?
“[GUARDIAN AD LITEM]: Your Honor, I stand on the guardian ad litem report that’s been submitted. I object to the children being called to testify and ask that the Court deny said request.
“THE COURT: All right. Based on the guardian ad litem’s report and her recommendation, I—
“[HUSBAND’S COUNSEL]: Judge, could I have opportunity to respond to that before you rule?
“THE COURT: Yes. Go right ahead.
“[HUSBAND’S COUNSEL]: Judge, I reviewed this report and let me say I reviewed the first report, and this is substantially similar it appears to me. The only reason I requested that these children be allowed to testify is they were aware of what was said in the first report and I — they actually came to me and stated that wasn’t what they — and that was a long time ago and said they wanted to talk to the Court and I told them that anything that would be done would have to be done through the Court, but that’s — -now, I didn’t go through verbatim because I don’t do *1238 that with kids especially if they’ve got a guardian ad litem, but they were aware of what was in the first report as you are well aware of, and they said that that’s not what they told the guardian ad litem. And I have not—
“THE COURT: When did you have that conversation with them?
“[HUSBAND’S COUNSEL]: Sir?
“THE COURT: "When did you have that conversation with them?
“[HUSBAND’S COUNSEL]: Right after the initial guardian ad litem report was filed.
“THE COURT: And can I assume that the guardian ad litem has met with the children after that?
“[GUARDIAN AD LITEM]: Yes.
“[HUSBAND’S COUNSEL]: I know she has. Judge. She’s had to because of — I mean, we suggested that after the last hearing.
“THE COURT: Okay.
“[HUSBAND’S COUNSEL]: And I have not. Judge. I have not spoken with them individually, and I’m not going to do it. It was their — I informed them when we had the meeting, I actually brought my secretary in there because I don’t like to meet with kids about anything, but I had her come in there with me so it wouldn’t be just me up here, and I wanted to make sure that I didn’t misinterpret anything. Now, I understand they were under pressure. Don’t get me wrong. But I think that [one child] is 12, almost 13 years old and it wouldn’t take but a minute to find out whether this thing is substantially true or whether it’s — I mean, if they’ve told [guardian ad litem] that, I’m not doubting what they’ve told her, but I just have not talked to them at all since the other time and wasn’t planning to.
“[GUARDIAN AD LITEM]: Your Honor, my response is that my guardian ad litem report is brief, this second one, because I’m not going to divulge verbatim what my clients have expressed to me, that the children are very aware that [the husband’s counsel] represents [the husband]. I think that I made it very clear that I felt like there had been manipulation and that there had been other kinds of tactics going on, and, again, I object to the children being called to testify.
“THE COURT: All right. I’m not going to allow the children to testify and I’m going follow through with the guardian ad litem’s recommendation. She’s their attorney and they have talked to her in strictest confidence I am sure. That’s her request and I am going to uphold it.”
On December 4, 2012, the trial court entered a judgment of divorce. Among other things, the judgment granted a divorce to the wife on the ground of incompatibility of temperament; granted joint legal custody of the children to both parties, with the wife having primary physical custody; granted specific visitation periods to the husband; ordered the husband to pay child support together with an arrear-age amount; incorporated the property settlement previously agreed to by the parties; addressed retirement and insurance issues; and ordered the husband to pay the fee for the guardian ad litem. The judgment also ordered the husband to pay periodic alimony to the wife in the amount of $300 per month “for a period of sixty (60) months or until the wife dies, remarries or co-habits or upon further order of the Court, whichever occurs first.”
On December 27, 2012, through new counsel, the husband filed a timely post-judgment motion for a new trial or to alter, amend, or vacate the judgment, pur *1239 suant to Rule 59, Ala. R. Civ. P., challenging the award of child support and the arrearage due from the husband,[1] the award of primary physical custody to the wife, the exclusion of testimony from the children, and the award of alimony. Regarding the exclusion of testimony from the children, the husband’s motion asserted:
“The Court erred in not allowing the minor children of the parties to testify, who were age 12 and 10 at the time of the trial and had indicated their preference as to where and with which parent they wanted to reside with and the reasons why they wished to reside with the preferred parent.”
Regarding the alimony awarded to the wife, the motion asserted:
“The Court erred in setting alimony in the amount of $800.00 per month for five years due to the fact that the [husband] cannot meet the other obligations he has been required to assume and pay this amount of alimony.”
It is not clear whether a hearing was conducted on the motion; however, on February 19, 2018, the trial court entered an order reducing the amount of alimony payable by the husband to $150 per month but denying all other claims for relief. The husband filed a timely appeal to this court.

Analysis

I. Alimony Award to the Wife

The husband contends that the trial court should not have awarded periodic alimony to the wife. Ordinarily, we apply the following standard of review to this issue:
“The determination of whether the petitioning spouse has a need for periodic alimony, of whether the responding spouse has the ability to pay periodic alimony, and of whether equitable principles require adjustments to periodic alimony are all questions of fact for the trial court, Lawrence v. Lawrence, 455 So.2d 45, 46 (Ala.Civ.App.1984), with the last issue lying particularly within the discretion of the trial court. See Nolen v. Nolen, 398 So.2d 712, 713-14 (Ala.Civ.App.1981). On appeal from ore tenus proceedings, this court presumes that the trial court properly found the facts necessary to support its judgment and prudently exercised its discretion. G.G. v. R.S.G., 668 So.2d 828, 830 (Ala.Civ.App.1995). That presumption may be overcome by a showing from the appellant that substantial evidence does not support those findings of fact, see § 12-21 — 12(a), Ala.Code 1975, or that the trial court otherwise acted arbitrarily, unjustly, or in contravention of the law. Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980).”
Shewbart v. Shewbart, 64 So.3d 1080, 1089 (Ala.Civ.App.2010).
In his postjudgment motion, the husband challenged the award of alimony by stating:
“The Court erred in setting alimony in the amount of $300.00 per month for five years due to the fact that the [husband] cannot meet the other obligations he has been required to assume and pay this amount of alimony. The partial settlement of this case on February 13, 2012 addressed all issues with the exception of custody and child support. The [husband] transferred the majority of the monetary assets to the [wife] to avoid paying alimony.”
No objection appears to have been raised at trial to the presentation of evidence as to the respective incomes and *1240 expenses of the parties on the basis that the resolution of the property issues constituted a waiver of the claim seeking alimony by the wife. On appeal, the husband references the property settlement and the assets awarded to the wife, but he does not pursue the argument that the joint property settlement constituted a waiver of the claim seeking alimony by the wife. Instead, his sole argument is that the alimony award causes the wife’s income to exceed his income. He does not cite any evidence of the respective expenses of the parties and does not argue that the award exceeds the wife’s needs. The wife counters the husband’s argument by citing testimony that indicates that the husband’s income would still exceed the wife’s income even with the $150 alimony award.
The trial court’s judgment makes no specific findings of fact regarding the award of alimony. To the extent the husband’s argument can be construed as a challenge to the sufficiency of the evidence regarding the alimony award, i.e., a challenge to the evidence regarding the wife’s needs and the husband’s ability to pay, the issue was not presented to the trial court and cannot be addressed on appeal. See New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004) (“[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.”). If the husband’s argument is construed as a challenge to the trial court’s discretionary authority to fashion an award of alimony, the husband fails to argue or establish sufficient grounds showing that the trial court exceeded its discretion in determining the amount of alimony. Shewbart, supra. Therefore, no reversible error is shown as to the award of alimony.

II. Exclusion of Testimony of the Children

The husband also contends that the trial court erroneously excluded testimony from the children. Our standard of review of a trial court’s ruling excluding evidence is as follows:
“‘“The standard applicable to a review of a trial court’s rulings on the admission of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to admit evidence.” ’ Mock v. Allen, 783 So.2d 828, 835 (Ala.2000) (quoting Wal-Mart Stores, Inc. v. Thompson, 726 So.2d 651, 655 (Ala.1998))....
“ ‘ “The second principle ‘is that a judgment cannot be reversed on appeal for an error [in the improper admission of evidence] unless ... it should appear that the error complained of has probably injuriously affected substantial rights of the parties.’ ” ’ Mock, 783 So.2d at 835 (quoting Wal-Mart Stores, 726 So.2d at 655, quoting in turn Atkins v. Lee, 603 So.2d 937, 941 (Ala.1992)). See also Ala. R.App. P. 45. ‘The burden of establishing that an erroneous ruling was prejudicial is on the appellant.’ Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165, 167 (Ala.1991).”
Middleton v. Lightfoot, 885 So.2d 111, 113-14 (Ala.2003). The Alabama Rules of Evidence provide that a judgment cannot be reversed because evidence was improperly excluded unless “the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.” Rule 103(a)(2), Ala. R. Evid.
The wife asserts that the husband agreed to exclude testimony from the chil *1241 dren when he asked for the appointment of a guardian ad litem, where he asserted that the appointment would “prevent the children from having to testify in open court” and would keep them from “being placed in an adversarial position where they will have to testify as to which parent they wish to reside with.” This language does not bar the husband’s request for the trial court to hear testimony from the children, particularly because the husband’s request referred to preventing the children from testifying in “open court” in an adversarial setting and his request at trial was for an in camera hearing. See Leigh v. Aiken, 54 Ala.App. 620, 623-24, 311 So.2d 444, 447 (Ala.Civ.App.1975) (“Protec-ti[ng] ... the child from the emotional experience of expressing a preference as between one parent or another in open court in their presence and being subjected to cross-examination is within the discretion of the court.”); Rule 611(a), Ala. R. Evid. (permitting the trial judge to “protect witnesses from harassment or undue embarrassment”). Further, the guardian ad litem’s report was prepared and submitted after the motion for the appointment of a guardian ad litem was filed, and consequently, the husband would not have known in advance the contents of the report. Therefore, the statements in the husband’s motion did not bind him in advance to accept any submissions filed by the guardian ad litem or prevent him from seeking to present testimony from the children.
The wife objected to the husband’s request for in camera testimony from the children because, she asserted, it would be “detrimental to the children to be called as witnesses and put them under further, emotional stress and strain” and it was within the court’s discretion to accept the guardian ad litem’s report in lieu of testimony. The guardian ad litem asserted that she would “stand on the [guardian ad litem] report that’s been submitted,” and she expressed her opinion that there had been “manipulation and ... other kinds of tactics going on.” In his postjudgment motion, the husband asserted through new counsel that the children’s proposed testimony would have “indicated their preference as to where and with which parent they wanted to reside with and the reasons why they wished to reside with the preferred parent.” But that was not the reason the husband’s trial counsel offered in response to the objections raised. At trial, the husband’s counsel stated the following reason for his request to present testimony from the children:
“The only reason I requested that these children be allowed to testify is they were aware of what was said in the first report and I — they actually came to me and stated that wasn’t what they — and that was a long time ago and said they wanted to talk to the Court and I told them that anything that would be done would have to be done through the Court, but that’s — now, I didn’t go through verbatim because I don’t do that with kids especially if they’ve got a guardian ad litem, but they were aware of what was in the first report as you are well aware of, and they said that that’s not what they told the guardian ad litem.”
In response to the proffered reason for the testimony, the guardian ad litem stated:
“Your Honor, my response is that my guardian ad litem report is brief, this second one, because I’m not going to divulge verbatim what my clients have expressed to me....”
Although the guardian ad litem’s response appears to refer to a “second” report, the only guardian ad litem report in the record is the June 2011 report. That document, admitted into evidence ap *1242 parently without objection, contained observations and recommendations from the guardian ad litem but no indication of the preference of any child to live with either parent, nor did it contain any statements, opinions, or assertions attributable to either child. There is no indication in the record regarding what aspect of the guardian ad litem’s report would purportedly be contradicted by the children’s in camera testimony. The husband’s trial counsel also stated: “But I think that [one child] is 12, almost 13 years old and it wouldn’t take but a minute to find out whether this thing is substantially true or whether it’s— I mean, if they’ve told the [guardian ad litem] that, I’m not doubting what they’ve told her, but I just have not talked to them at all since the other time and wasn’t planning to.” There is no indication of what “thing” or “that” was being referenced by the husband’s counsel. The husband presented a sufficient offer of proof of the proposed testimony for purposes of Rule 103, Ala. R. Evid., by informing the trial court that the substance of the proposed testimony would be the children’s contradicting unspecified statements in the guardian ad litem’s report. But any statement made by a child to the guardian ad litem was not shown to be a “fact that is of consequence” in the proceedings. Rule 401, Ala. R. Evid. Stated otherwise, the husband failed to establish the materiality of the requested testimony and, therefore, the relevance of that testimony. The objections of the guardian ad litem and the wife can be viewed as essentially arguing, pursuant to Rule 403, Ala. R. Evid., that any probative value of the testimony from the children would be substantially outweighed by its cumulative nature, particularly in view of the sensitivity of presenting child testimony in custody proceedings. But Rule 403 first requires that the proposed evidence be relevant to the proceedings, and the husband’s offer of proof pursuant to Rule 103 failed to establish the relevancy of the requested testimony. See II Charles W. Gamble and Robert J. Goodwin, McElroy’s Alabama Evidence § 425.01(1) (6th ed. 2009) (“An offer of proof generally consists of the attorney’s stating to the judge what the witness would say ... and what relevancy the expected answer would possess.”). Thus, the wife’s and the guardian ad litem’s objection were properly sustained, albeit for a different reason than the one expressed by the trial court. See Blanton v. State, 886 So.2d 850, 861 n. 1 (Ala.Crim.App.2003) (rulings on the admissibility of evidence may be affirmed on appeal if “correct for any reason”).
Had the requested testimony been offered at trial for the purpose of having the children express their preference for or against a certain parent becoming their custodial parent, a ruling excluding the testimony in its entirety may have exceeded the trial court’s discretion. In Ellison v. Ellison, 628 So.2d 855 (Ala.Civ.App.1993), we reversed a judgment regarding child custody when the trial court had refused to permit a child of the parties to testify, holding:
“Our Supreme Court has stated that ‘a trial court may not prohibit a witness from testifying in a divorce case solely because the proposed witness is a child of the parties even though calling children to testify against one of their parents in a divorce case is distasteful and should be discouraged.’ Ex parte Harris, 461 So.2d 1332, 1333 (Ala.1984). (Citation omitted.) As long as a child is otherwise competent to testify, there is no statutory prohibition against the testimony. Harris, supra. ‘Testimony of competent children in a divorce action must be admitted, if relevant, otherwise admissible, and not merely cumulative.’ Harris at 1334. See also Bebee v. Har- *1243 grove, 607 So.2d 1270 (Ala.Civ.App.1992).”
628 So.2d at 858. But the husband cannot place the trial court in error for sustaining objections at trial by presenting a new purpose for the requested testimony, here the preference of the children, through new counsel in his postjudgment motion. See Systrends, Inc. v. Group 8760, LLC, 959 So.2d 1052, 1065 (Ala.2006) (“Where the evidence may be admissible for one purpose but inadmissible for another, the offeror must so specify in his offer in order to put the trial court in error.”); II McEl-roy’s Alabama Evidence § 425.01(13) (“If a fact is offered for a specified purpose, and such fact is not admissible for that purpose, the trial court’s rejection of the offer will be affirmed even though there existed an unspecified purpose for which such fact was admissible.”).
In support of his application for rehearing, the husband contends that the trial court denied him his right to procedural due process by not allowing the children to testify, citing Ex parte R.D.N., 918 So.2d 100 (Ala.2005). In that case, however, the trial court did not allow either party to contest the guardian ad litem’s recommendations during the trial on the merits. R.D.N., 918 So.2d at 104-05. R.D.N. is inapposite to the present case because, in this case, the guardian ad litem’s recommendation was presented to all parties at trial and the parties were afforded the opportunity to contest the recommendation.
Therefore, because the relevance of the proposed testimony was not established at trial, the refusal to permit the children to testify is not reversible error. We note that the husband also argues on appeal that there was no showing that the children were incompetent to testify; however, the testimony was not excluded based on the alleged incompetency of the children.

III. Award of Physical Custody of the Children to the Wife

The husband also challenges the award of physical custody of the children to the wife. This was an initial custody determination based primarily upon evidence presented ore tenus. Our standard of review is as follows:
“ ‘Alabama law gives neither parent priority in an initial custody determination. Ex parte Couch, 521 So.2d 987 (Ala.1988). The controlling consideration in such a case is the best interest of the child. Id. In any case in which the court makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court’s judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong. Ex parte Perkins, 646 So.2d 46 (Ala.1994). The presumption of correctness accorded the trial court’s judgment entered after the court has heard evidence presented ore tenus is especially strong in a child-custody case. Id.’
“Ex parte Byars, 794 So.2d 345, 347 (Ala.2001).
“ ‘ “This presumption [accorded to the trial court’s findings of fact based on ore tenus evidence] is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. ‘In child custody cases especially, the perception of an attentive trial judge is of great importance.’ Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981). In *1244 regard to custody determinations, this Court has also stated: ‘It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).”
“ ‘Ex parte Farm, 810 So.2d 631, 632-33 (Ala.2001).
“‘In a divorce action between two fit parents, where there has been no prior custody determination and neither parent has voluntarily relinquished custody of the child, the “best interest” of the child is controlling; the parties stand on “equal footing” and no presumption inures to either parent. “ ‘ “The trial court’s overriding consideration is the children’s best interest and welfare.” ’ ” Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App.1998) (quoting Collier v. Collier, 698 So.2d 150, 151 (Ala.Civ.App.1997), quoting in turn Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App.1994)).
‘“In considering the best interests and welfare of the child, the court must consider the individual facts of each case:
“ * “The sex and age of the children are indeed very important considerations; however, the court must go beyond these to consider the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose.”
“ ‘Ex parte Devine, 398 So.2d 686, 697 (Ala.1981).’
“Fell v. Fell, 869 So.2d 486, 494-95 (Ala.Civ.App.2003).”
Long v. Long, 109 So.3d 633, 645-46 (Ala.Civ.App.2012).
The trial court heard ore tenus testimony from both the husband and the wife and numerous other witnesses on the issue of custody of the children. It was for the trial court to assess the weight of the evidence presented as well as the credibility, demeanor, and behaviors of the parents in making the decision. In view of the evidence demonstrating the stability offered by the wife and the instability of the husband, the decision to award physical custody of the children to the wife is supported by the evidence and has not been shown to be reversible error.

Conclusion

The husband failed to establish that the trial court committed reversible error in excluding the testimony of the children, in awarding physical custody of the children to the wife, or in awarding periodic alimony to the wife. Therefore, the judgment should be affirmed. The wife’s request for an attorney’s fee on appeal is denied.
*1245 APPLICATION GRANTED; NO OPINION ORDER OF AFFIRMANCE OF MAY 9, 2014, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The husband does not raise this issue on appeal.