MOORE, Judge.
Jamie Diana Turner (“the mother”) appeals from a judgment entered by the Jefferson Circuit Court (“the trial court”) divorcing her and Courtney Amos Thomas (“the father”) on the ground of adultery, awarding custody of the parties’ child, C.A.T. (“the child”), to the father, ordering the mother to pay child support, ordering the mother to reimburse the father for certain expenses he had incurred on behalf of the child, and ordering the mother to pay certain fees for the child’s guardian ad litem and a portion of the father’s attorney’s fees. We affirm the trial court’s judgment in part and reverse it in part.
I. Ground for Divorce
Alabama law recognizes adultery as a ground for divorce. See § 30-2-l(a)(2), Ala.Code 1975. Caselaw has not explicitly defined the meaning of “adultery” for the purpose of applying § 30—2—1 (a)(2), 1 Judith S. Crittenden & Charles P. Kindregan, Jr., Alabama Family Law § 5:8 (2008), but the appellate courts of this state have clarified that a trial court may divorce parties only for adulterous conduct preceding the filing of the divorce complaint. See Morgan v. Morgan, 183 So.3d 945, 955 (Ala.Civ.App.2014) (“[T]he party alleging adultery must present sufficient evidence to establish that the adulterous behavior took place before the filing of the divorce complaint.”). Hence, when the record contains insufficient evidence indicating that a spouse committed adultery before the filing of the complaint for a divorce, a trial court errs in divorcing the parties based on adultery. See, e.g., Ragan v. Ragan, 655 So.2d 1016 (Ala.Civ.App.1995).
In this case, the father did not request that the trial court divorce the parties on the ground of adultery. At trial, the father testified that before November 27, 2012, the date the mother filed the divorce complaint, he had seen the mother talking with Jamie Gamble at one or more of the child’s baseball games. The father testified that he had objected to the mother’s interaction with Gamble because “she didn’t really know [Gamble].” The father also testified that, in the period leading up to the service of the divorce complaint, there was “[n]o communication, a lot of secretness, texting and on the phone all time.” The mother testified that Gamble had attended one of the child’s baseball games in the fall of 2012 and that he had sat with her at that game, but, she said, she had started “dating” Gamble only “a couple of months” before April 2013. The mother gave birth to a child fathered by Gamble on December 29, 2013, and gave birth to another child, who was also fathered by Gamble, on December 10, 2014. The mother admitted that she had committed adultery, meaning that she had engaged in sexual relations and had cohabited with Gamble while she was still married to the father, but maintained that any adulterous activity occurred only after the par *607 ties had separated and she had filed for a divorce.
Incidents of adultery occurring after a divorce complaint is filed are admissible to corroborate evidence of adultery before the date of filing, but such incidents cannot be the sole basis for granting a divorce on the ground of adultery. Smith v. Smith, 599 So.2d 1182, 1184 (Ala.Civ.App.1991). The record contains undisputed evidence indicating that the mother cohabited with and engaged in sexual intercourse with Gamble after the filing of the divorce complaint, but the record contains insufficient evidence of any similar adulterous conduct before that date. See Scott v. Scott, 215 Ala. 684, 112 So. 218 (1927) (explaining that evidence of post-filing incidents of adulterous conduct may be admitted as confirmatory or cumulative evidence of the same or similar pre-filing incidents of the same conduct). The mere fact that the mother was seen in a public venue with Gamble and that she had engaged in unexplained acts of “secretness” as well as had frequently used her cellular-telephone and text-messaging service to communicate with unknown persons does not equate to evidence of adulterous conduct, see Capone v. Capone, 962 So.2d 835 (Ala.Civ.App.2006), which, in this state, must be of such a nature as to “lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference.” Maddox v. Maddox, 281 Ala. 209, 212, 201 So.2d 47, 49 (1967). Without sufficient evidence of any pre-filing adulterous conduct, the clear evidence regarding the mother’s post-filing relationship with Gamble cannot be considered as sufficiently supporting adultery as the ground for the parties’ divorce. See Hilley v. Hilley, 275 Ala. 617, 157 So.2d 215 (1963). Therefore, we reverse the judgment insofar as it divorced the parties on the ground of adultery.
II. Child Custody
The child was born to the mother before the marriage between the mother and the father. In its judgment, the trial court determined, based on the parties’ stipulation, that the child was the parties’ child and awarded sole physical custody of the child to the father, subject to the right of scheduled visitations by the mother. The mother contends that the trial court reached its custody determination by erroneously limiting the testimony of the child and by erroneously basing its decision on the mother’s adultery. We disagree.
The child was 10 years old at the time of the trial. The mother notified the trial court that she intended to call the child to testify about, among other things, the father’s “taking [the child’s] money as well as selling [the child’s toys] and pawning or doing whatever with them.” After a lunch recess, the trial court informed the parties that they would not be allowed to examine the child regarding the alleged taking of the child’s property by the father. The trial court reasoned that the property in question was actually owned by the parents unless otherwise vested in the child by an order of the trial court and that the father would have had an unrestricted right to dispose of the property, particularly if the father had done so as a disciplinary measure. The trial court indicated that the father’s disposition of the property would not affect the custody determination. The mother’s attorney indicated that she expected that the child would have testified that the father had sold the child’s bicycle and had kept the proceeds of the sale and that the father had, against the child’s wishes, sold video games the mother and others had given the child.
The father denied that he had ever taken money from the child. He explained that, for disciplinary reasons, he did on *608 occasion withhold from the child money the child otherwise would have received. The father testified that he had sold a “Power Wheel” that he had purchased as a Christmas gift for the child because the child had outgrown it and that the proceeds from that sale had been used to purchase Christmas gifts for the child the following year. The father also testified that he had sold a bicycle he had given the child in order to purchase the child a new bicycle. The father further testified that the child had traded-in video games that were compatible with a gaming system the child had once used in the mother’s home, but which had since disappeared without explanation, in order to obtain new video games that would be compatible with a new gaming system the father had purchased for the child for use at the father’s home.
On appeal, the mother does not argue that the reasons given by the trial court for excluding the testimony of the child were erroneous, so that argument is waived. Jones v. Sherrell, 52 So.3d 527, 533 (Ala.Civ.App.2010). The mother instead argues that she intended to use the child’s testimony to prove that the father lacked sufficient financial means to properly care for the child, a relevant factor in determining custody of the child. See Ex parte Devine, 398 So.2d 686 (Ala.1981). However, the mother did not argue that point to the trial court. The mother cannot place the trial court in error for excluding the child’s testimony “by presenting a new purpose for the requested testimony” on appeal. Cooper v. Cooper, 160 So.3d 1232, 1243 (Ala.Civ.App.2014). Moreover, the mother questioned the father at length about the father’s employment and financial circumstances, and the trial court fashioned a child-support award to assure that the material needs of the child would be met in accordance with the means of the parents. We conclude that the trial court did not exceed its discretion in excluding the proffered testimony and that the mother has failed to show that the exclusion of the child’s testimony has probably injuriously affected her substantial rights. Cooper, 160 So.3d at 1240 (setting out standard of appellate review of ruling excluding testimony of child in a divorce case).
The mother next argues that the trial court erred in overruling her objection to a line of questioning by the guardian ad litem regarding her post-filing relationship with Gamble. The record shows that the mother did not raise an objection until the guardian ad litem had already been questioning the mother about her relationship with Gamble for several pages of the transcript, and, then, when the mother’s counsel did object, he did not state a ground for the objection. “Generally speaking, in order to preserve for appellate review an issue regarding an error in the admission of evidence, an appellant must have made a timely and specific objection to the evidence at trial.” Johnson v. L.O., 42 So.3d 759, 762 (Ala.Civ.App.2010). Later, the mother’s counsel objected “to this entire line of questioning,” stating: “It is badgering.” Now, on appeal, the mother argues that the trial court erred in receiving the evidence of adultery because, she says, it was not relevant to the custody determination. 'When the grounds for an objection are stated, this impliedly waives all other grounds for the objection to the evidence; and the objecting party cannot predicate error upon a ground not stated in the trial court, but raised for the first time on appeal.” Nichols v. Southeast Prop. Mgmt., Inc., 576 So.2d 660, 662 (Ala.1991) (citations omitted).
*609 The mother also argues that the trial court premised its custody determination on her adultery.
“The trial court may consider a parent’s adultery in determining custody; however, ‘acts of adultery do not bar an award of custody to the party who committed adultery. Etheridge v. Etheridge, 375 So.2d 474, 475 (Ala.Civ.App.1979). Rather, in order to deprive a parent of custody because of his or her act of adultery, there must be evidence that the adultery had a ‘direct bearing upon the welfare of [the] children.’ Hearold v. Hearold, 620 So.2d 48, 49 (Ala.Civ.App.1993).”
J.H.F. v. P.S.F., 835 So.2d 1024, 1029 (Ala.Civ.App.2002). The mother argues that the trial court erroneously relied on the fact that the mother had engaged in a sexual relationship with Gamble to deny her custody of the child.
With regard to custody, the trial court stated in paragraph 5 of the divorce judgment:
“[T]he Court finds that the [mother] is unfit for custody [for reasons] including] but not limited to the following:
“a. [Gamble] had the minor child ... in his car and got into an accident. He fled the scene of the accident and left the child in the car. The minor child suffered a seat belt laceration to the neck, but the [mother] failed to take the child to the hospital for it.... The [father] took the child to the hospital and had him examined and treated. Yet the [mother] continued to allow [Gamble] to care for the minor child.
“b. The minor child has extensive problems and absences while in the care of the [mother] in which his grades suffered.
“c. ... [A] witness testified that the child came to her house and stated he was home alone and that his mother was not there. The child stayed with her and stayed in her home until approximately 9:00 p.m. or 10:00 p.m. that night.
“d. ... [A] witness observed [Gamble] ... stay overnight with the child present.
“e. ... [Gamble] has an extensive criminal history from eluding the police to burglary.
“f. ... [T]he [mother] has had two children during the pendency of this marriage one of which is [Gamble’s child].
“g. ... [T]he child went without his prescription [medication] for (10) days because the [mother] would not give the [father the child’s] prescription.
“h.... [T]he child has come to the [father’s] house improperly dressed.”
The judgment does not directly provide that the mother is unfit for custody because she engaged in an adulterous relationship with Gamble. To the extent that it may be construed as considering that relationship, the judgment shows that the trial court considered not just the fact of the relationship but also that it concentrated on the effects of that relationship on the best interests and welfare of the child. The evidence in the record shows that Gamble has multiple felony convictions and that he was, in fact, incarcerated at the time of the divorce trial. While the divorce action was pending, the mother, without investigating Gamble’s background, had allowed Gamble to assume caregiving responsibilities for the child and had allowed the child to ride in an automobile being driven by Gamble, which led to an automobile accident that Gamble fled, leaving the child alone. The mother has two other children by Gamble, who, *610 due to his incarceration, does not pay child support. The second child was conceived after the mother learned of Gamble’s criminal background. All of the mother’s children live with her in her two-bedroom house. The trial court considered the foregoing evidence as establishing that the mother’s relationship had detrimentally affected the child, which was the court’s prerogative. supra. Moreover, the terms of the judgment itself demonstrate that the trial court did not adjudicate the custody of the child solely on the ground of the mother’s adultery, as she argues.
The mother does correctly assert that some of the specific findings of fact made by the trial court about her fitness to parent the child are not borne out by the evidence in the record. Specifically, we cannot find evidence in the record to support the findings made in subpara-graphs b. and g. of paragraph 5 of the judgment. Nevertheless, once the child was legitimated, the trial court did not have to find the mother unfit in order to award custody of the child to the father; rather, that determination rested entirely on the best interests of the child. See B.E.B. v. H.M., 822 So.2d 429 (Ala.Civ.App.2001). The mother does not argue that the trial court erred in implicitly determining that the best interests of the child would be served by placing the child in the custody of the father. On appellate review, we presume that that implied determination is correct, and our review of the record shows that the trial court received sufficient evidence from which it could have reached its conclusion. See Long v. Long, 109 So.3d 633, 645-46 (Ala.Civ.App.2012) (explaining standard of review of initial custody determinations in disputes involving natural parents). Hence, any erroneous specific finding regarding the alleged unfitness of the mother would be, at best, harmless error that will not support a reversal of the trial court’s judgment. See Rule 45, Ala. R.App. P.
III. Child Support
The mother next argues that the trial court erred in computing child support, specifically, in failing to find the father voluntarily underemployed. Rule 32(B)(5), Ala. R. Jud. Admin., provides, in pertinent part:
“If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income.”
“[T]he determination that a parent is voluntarily unemployed or underemployed ⅛ to be made from the facts presented according to the judicial discretion of the trial court.’ ” Clements v. Clements, 990 So.2d 383, 394 (Ala.Civ.App.2007) (quoting Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992)).
In the present case, the evidence indicates that, during the marriage, the father had suffered an on-the-job injury and that he had received workers’ compensation benefits for over two years. The father testified that he had since obtained part-time employment for a department-store chain. He testified that, since he has been working for that chain, he has been promoted, has received a pay increase, and has had his hours increased to between 22 and 35 hours per week. Considering the fact that the father is apparently successfully endeavoring to receive more hours and more pay at his current employment, we cannot conclude that the trial court erred in not finding the father voluntarily underemployed. Therefore, we decline to reverse the judgment on the basis that the *611 trial court used the actual employment income of the father when computing the child-support obligation of the mother rather than imputing additional income to the father under Rule 32(B)(5).
The mother also argues that the trial court erred in ordering her to pay child support retroactive to June 15, 2015, and in ordering her to reimburse the father for certain expenses he had incurred on behalf of the child while the child was in his custody during the pendency of the divorce action. We note, however, that the mother has failed to cite any authority in support of those arguments. Therefore, we will not reverse the trial court’s judgment on those points. See Rule 28(a)(10), Ala. R.App. P. (requiring an appellant to cite authority in support of his or her position).
IV. Attorney’s Fees and Guardian ad Litem’s Fees
The mother next argues that the trial court erred in ordering her to pay the guardian ad litem’s fees and in ordering her to pay $15,000 of the father’s attorney’s fees.
The mother filed a motion to appoint a guardian ad litem for her then unborn child on October 3, 2013. On January 31, 2014, after a hearing on the matter, the trial court appointed a guardian ad litem for both that child, who was born on December 29, 2013, and the parties’ child. On December 9, 2014, the trial court ordered each party to pay $3,087.75 to the guardian ad litem. The father paid his portion, but the mother did not. At the outset of the trial of the case on April 6, 2015, the mother informed the trial court that she lacked the ability to pay her portion of the guardian ad litem’s fees. After the trial court indicated that the trial would not proceed, the child’s maternal grandmother tendered a check to the guardian ad litem for the mother’s portion of the fees. The guardian ad litem later submitted another bill in the amount of $6,043.75. The trial court indicated that it intended to order the mother to pay that bill in its entirety, and directed the guardian ad litem to prepare an order to that effect, but the trial court subsequently set a hearing for October 5, 2015, to consider the mother’s objections to the fees. The mother appealed on September 10, 2015, and represents to this court that the October 5 hearing did not take place.
The trial court entered an interlocutory order requiring the parties to each pay $3,087.75 of the guardian ad li-tem’s fees; the propriety of that interlocutory order can be reviewed on appeal from the final judgment of divorce. See Robert S. Grant Constr., Inc. v. Frontier Bank, 80 So.3d 901 (Ala.2011). The trial court entered an order stating its intent to require the mother to pay the balance of the fees, but it did not actually adjudicate the matter. See generally Hayes v. Hayes, 16 So.3d 117, 120 (Ala.Civ.App.2009) (oral statement of intent to rule does not amount to rendition and entry of judgment as contemplated by Rule 58, Ala. R. Civ. P.). The failure of the trial court to enter a conclusive order on that outstanding issue does not affect the finality of the divorce judgment, see State Dep’t of Human Res., 69 So.3d 895, 896 n. 1 (Ala.Civ.App.2011), but it does mean that the issue whether it is appropriate to hold the mother responsible for the balance of the guardian ad litem’s fees is not ripe for appellate review. See generally Ex parte Kelley, [Ms. 1131451, Nov. 6, 2015] _ So.3d _ (Ala.2015) (alleged errors regarding sexual-torture case were not ripe for appeal when no judgment of conviction was rendered or entered). Hence, this court will consider only the propriety of *612 the order requiring the mother to pay $3,087.75 in fees.
Before paying the fees, the mother objected only on the ground that she could not afford to pay the amount. The mother later argued that the fees were unreasonable and excessive.
“Rule 17(d) of the Alabama Rules of Civil Procedure provides that when a guardian ad litem has been appointed, the court must ascertain what is a reasonable fee for his services, and that fee will be taxed as a part of the costs in the action. The matter of the guardian ad litem’s fee is within the discretion of the trial court, subject to correction only for abuse of discretion. Commercial Standard Insurance Company v. New Amsterdam Casualty Company, 272 Ala. 357, 362, 131 So.2d 182, 186 (1961).”
Englund v. First Nat’l Bank of Birmingham, 381 So.2d 8, 12 (Ala.1980). This court has held that a trial court should establish a guardian ad litem’s fees using the same criteria as are applicable to awards of attorney’s fees in general. See Roberts v. Roberts, 189 So.3d 79 (Ala.Civ.App.2015).
The trial court received itemized invoices detailing the services provided and the time spent by the guardian ad litem. The mother now objects on appeal to the scope of the guardian ad litem’s appointment and some of the. time entries, but she did not make those same objections at trial, and, therefore, we cannot consider them on appeal. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). The time entries reflect that the guardian ad litem devoted his time to matters relating to the litigation, including repeated efforts to join Gamble as a party and to obtain paternity testing for the two children of the mother born while the action was pending. The time entries also show that the guardian ad litem spent a reasonable amount of time on each task. The guardian ad litem, who is an attorney who has practiced law for 48 years, charged $180 per hour for his services. See Roberts, supra (affirming judgment awarding guardian ad litem’s fees based on an hourly rate of $200 per hour).
According to the child-support forms in the record, the mother earns approximately $1,650 in gross monthly wages. The father earns approximately $1,310 in gross monthly wages. The record indicates that the parties do not have substantial monetary assets. The mother essentially argues that the guardian ad litem should not have invested as much time in what she argues was a “simple” divorce action knowing the parties’ relatively limited financial circumstances. The mother herself requested the appointment of the guardian ad litem, and the trial court had presided over the divorce action since its inception, observing firsthand the complexities of the case that required the intervention of the guardian ad litem. Based on the record before us, we cannot conclude that the trial court exceeded its discretion in awarding the guardian ad litem a fee of $6,172.50[1] or in ordering the mother to pay $3,087.50.
We do agree, however, that the trial court exceeded its discretion in ordering the mother to pay $15,000 of the father’s attorney fees. As an exception to the “American rule,” a trial court may order one spouse in a divorce action to pay *613 the attorney’s fees of the opposing spouse on the same principles as alimony, pursuant to its equitable jurisdiction. See Ex parte Smith, 34 Ala. 455 (1859).
“ ‘Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993).’ ”
Lackey v. Lackey, 18 So.3d 393, 402 (Ala.Civ.App.2009) (quoting Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996)). A trial court
“is not required to set forth a detailed analysis of all the applicable factors considered by it in exercising its discretion in establishing a reasonable attorney fee. However, where the trial court’s order does not articulate the basis for its attorney-fee award, we are left to search the record for the basis for the award. The record ‘must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee.’ Pharmacia [Corp. v. McGowan], 915 So.2d [549] at 553 [ (Ala.2004) ].”
Diamond Concrete & Slabs, LLC v. Andalusiau-Opp Airport Auth., 181 So.3d 1071, 1076 (Ala.Civ.App.2015).
The trial court did not articulate its reasons for ordering the mother to pay $15,000 of the father’s attorney’s fees. The trial court may well have determined that the mother prolonged the case as a result of her post-filing pregnancies, causing increased litigation expenses, and that the action resulted in a judgment generally favorable to the father. On the other hand, the trial court may have relied on its erroneous finding that the mother’s adultery caused the breakdown of the marriage and the resulting litigation. In either case, it remains that the mother would have to sacrifice the entirety of her after-tax income for a substantial part of a year just to pay that award, assuming she could forgo her other financial obligations, including the support of her children. It would be inequitable to allow the mother to be subjected to such a heavy financial burden without a clearer understanding of the trial court’s basis for the award. Therefore, we reverse the judgment insofar as it ordered the mother to pay $15,000 of the father’s attorney’s fees, and we remand the cause for the trial court to articulate its reasons for the award and to consider decreasing the award in light of our disposition of this appeal.
V. Reimbursement for Child-Gare Expenses
The trial court ordered the mother to reimburse the father $823 “for her share of the minor child’s expenses.” The mother contends that the trial court based its award on receipts submitted by the father for the child’s food, clothing, day care, and extracurricular activities that were incurred while the divorce action was pending and that the award violates a pen-dente lite order to which the parties had consented. However, the mother does not cite the pages of the record that support her contentions. “This Court does not have the obligation to search the record for substantiation of unsupported factual matter appearing in an appellant’s brief in order to determine whether a judgment should be reversed.” Friedman v. Fried *614 man, 971 So.2d 23, 31 (Ala.2007). We cannot reverse the judgment on this ground.

Conclusion

Based on the foregoing, we affirm the judgment of the trial court in part and reverse the judgment in part, and we remand the cause for further proceedings consistent with this opinion. The mother’s and the father’s requests for attorney’s fees on appeal are denied.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.
PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P.J., and THOMAS, J., concur in the result, without writings.

. We note that this amount does not equal the total derived from adding the individual amounts that the trial court ordered each party to pay.